**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

FREDERICK DIAZ,

                                        Plaintiff,

            - v -                                        Civ. No. 9:15-CV-0776
                                                                    (DNH/DJS)
STEPHANIE PELO, *et al.*,

                                        Defendants.


**APPEARANCES:**                              **OF COUNSEL:**

FREDERICK DIAZ
Plaintiff, *Pro Se*
86-B-2129
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902

HON. ERIC T. SCHNEIDERMAN                    NICOLE E. HAIMSON, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224


**DANIEL J. STEWART**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

        *Pro se* Plaintiff Frederick Diaz commenced this action, pursuant to 42 U.S.C. § 1983,

asserting claims arising from when he was incarcerated at Great Meadow Correctional Facility

("Great Meadow") while in the custody of the Department of Corrections and Community

Supervision ("DOCCS").   Dkt. No. 1, Compl.  Plaintiff paid the full filing fee.  Dkt. No. 2.

Presently before the Court is Defendants' Motion to Dismiss certain of Plaintiff's claims, filed

pursuant to FED. R. CIV. P. 12(b)(6).  Dkt. No. 17, Defs.' Mot. Dismiss.  Plaintiff has opposed the

Motion, and Defendants have filed a Reply. Dkt. Nos. 19, Pl.'s Resp., & 20, Defs.' Reply. Plaintiff also filed a Sur-Reply. Dkt. No. 21, Pl.'s Sur-Reply. For the reasons that follow, the Court recommends that Defendants' Motion be **granted in part and denied in part**.

## I. STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). Nonetheless, a *pro se* complaint must state a plausible claim for relief. *See Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)).

*-3-*

## II.  SUMMARY OF THE COMPLAINT

The following facts are set forth as alleged by Plaintiff in the Complaint.

At some point prior to the incidents from which Plaintiff's claims arise, Plaintiff filed a grievance accusing a Correction Officer ("C.O.") named Koegh[1] of having harassed him and stolen his television.  Compl. at ¶ 17.  On October 6, 2014, subsequent to filing that grievance, Plaintiff received notice in the mail that DOCCS had deducted $1,660.20 from his inmate account.  *Id.* at ¶ 17.  Plaintiff, who worked in the Inmate Grievance Office as an Inmate Grievance Representative, alleges that he and other inmates who worked in the Grievance Office had been approved to receive a higher rate of pay; whereas inmates normally received $7.75 per week, Plaintiff and the other inmates in the Grievance Office received $21.70 per week.  *Id.* at ¶ 19.  Plaintiff claims that the higher wages were an incentive for inmates to participate in "several select programs in the facility." *Id.*  The higher wages had been approved by the Deputy Superintendent of Programs and the Inmate Accounts Office.  *Id.*  The October 6 notice, however, informed Plaintiff that all of his pay in excess of $7.75 per week, from when he had commenced working in the Grievance Office on April 3, 2012 until July 1, 2014, had been deducted from his account.  *Id.* at ¶¶ 17 & 20.

Plaintiff alleges that Defendant Rachel Young, Acting Director of DOCCS' Office of Guidance & Counseling, had noticed Plaintiff's higher rate of pay in the course of investigating his allegation that Koegh had stolen his television.  *Id.* at ¶¶ 10 & 20.  Plaintiff claims that Young then consulted with Defendant Stephanie Pelo, Grievance Supervisor at Great Meadow, and learned that Plaintiff had legitimately received the higher wages.  *Id.* at ¶ 23.  Young, however, ordered the deduction from Plaintiff's account in order to retaliate against him for filing the grievance and in

---

[1] C.O. Koegh is not a defendant to this action.

order to avoid drawing to attention to the fact that Pelo had approved the higher wages. *Id.* at ¶¶ 20 & 23.

The following day, on October 7, 2014, Plaintiff reported to the Grievance Office and complained to Pelo about the deduction from his account. *Id.* at ¶ 27. Plaintiff stated that the deduction had been conducted illegally and without due process and he informed Pelo of his intention to file a grievance if the matter was not resolved informally. *Id.* Pelo began investigating the matter and told the other inmates in the Grievance Office that there was a possibility that their accounts would also be decreased. *Id.* at ¶ 28. When Plaintiff returned to the Office in the afternoon, Pelo told him that no other inmates would have their accounts deducted and that he should file a grievance about his account. *Id.* at ¶ 29.

Approximately half an hour later, a correction officer arrived at the Grievance Office and told Plaintiff he was immediately being removed to the Involuntary Protective Custody ("IPC") unit at the order of Defendant Rodney Eastman, the Deputy Superintendent of Security at Great Meadow. *Id.* Two days later, on October 9, 2014, Plaintiff was served with an IPC Recommendation Report authored by Defendant Sergeant C. Fraser. *Id.* at ¶ 30. The Report stated that based upon Plaintiff voicing his complaints about the deduction from his account, other inmates would likely seek to retaliate against Plaintiff when the facility made deductions from their accounts. *Id.* at ¶ 35.

Plaintiff alleges that the IPC report was based on a false premise—namely, that DOCCS was going to deduct money from other inmate accounts—and was only issued to retaliate against him. *Id.* at ¶¶ 35-36. Plaintiff alleges that Eastman and Fraser ordered his placement in IPC at the direction of Pelo. *Id.* at ¶¶ 29 & 33. Plaintiff accuses Pelo of wanting to retaliate against him for two reasons. First, Plaintiff had stated that he intended to file a grievance about the deduction from

his account, which might have drawn attention to Pelo's role in approving the higher wages. *Id.* at ¶ 30. Second, Plaintiff claims that Pelo was friends with Koegh. *Id.* at ¶ 32.

An IPC hearing was conducted by Defendant Kenneth McKeighan. *Id.* at ¶ 40. At the hearing, Plaintiff objected that: (1) McKeighan was presiding over the hearing although he was Eastman's subordinate; (2) Defendant Fraser had authored the IPC report without first-hand knowledge of the events; and (3) the IPC report referred to an expunged misbehavior report. *Id.* at ¶¶ 40-42. Plaintiff claims that McKeighan ignored all of these objections and also refused to verify the confidential source that Fraser based his report on. *Id.* at ¶¶ 40-42 & 45. McKeighan found that Plaintiff's IPC placement was warranted. *Id.* at ¶ 47.

Immediately after the IPC hearing, McKeighan also conducted an Inmate Grievance Resolution Committee ("IGRC") Impeachment Hearing, in order to have Plaintiff removed from his position as an Inmate Representative. *Id.* at ¶ 48. Plaintiff claims that he was never given proper notice of the basis of the hearing and that "the hearing was conducted behind Plaintiff's back." *Id.* at ¶ 48.

Plaintiff filed grievances relative to the deduction from his account, the use of the expunged misbehavior report, and the Grievance Committee Impeachment Hearing, but they were all denied by Pelo. *Id.* at ¶ 50. When Plaintiff complained to her about the processing of his grievances, she issued him a misbehavior report charging him with harassment. *Id.* at ¶ 51. Plaintiff was found guilty and was sentenced to sixty days in the special housing unit ("SHU"). *Id.* Plaintiff claims that this was part of the pattern of retaliation by Pelo against him. *Id.* Plaintiff claims that he suffered "great mental anguish" while in SHU, which led him to attempt to commit suicide. *Id.* at ¶ 62. The decision sentencing him to SHU was reversed on appeal. *Id.* at ¶ 51.

Plaintiff alleges that he informed Defendant Christopher Miller, the Superintendent of Great Meadow, numerous times, verbally and in writing, of the pattern of retaliation against him. *Id.* at ¶ 54. In addition, Plaintiff claims that Defendants Miller and Eastman repeatedly upheld his placement in IPC during thirty-day reviews on the basis that Plaintiff "supposedly had been labeled a 'rat.'" *Id.* at ¶¶ 54-55. In total, Plaintiff spent 134 days in IPC and SHU before being transferred from Great Meadow to another facility on February 19, 2015. *Id.* at ¶ 63.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 "for 'the deprivation of [his] rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (quoting *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) & 42 U.S.C. § 1983)). Liberally construed, Plaintiff asserts the following claims arising under the First and Fourteenth Amendments: (1) Defendants Pelo and Young violated his rights to due process and equal protection when they deducted $1,660.20 from his inmate account; (2) Defendants Pelo and Young retaliated against him when they deducted $1,660.20 from his inmate account; (3) Defendants Eastman and Fraser retaliated against him by issuing him a false IPC report; (4) Defendant McKeighan violated his right to due process during the IPC and IGRC impeachment hearings; (5) Defendant McKeighan retaliated against him by affirming his IPC placement; (6) Defendants Eastman and Miller retaliated against him by upholding his IPC placement; (7) Defendant Pelo retaliated against him by issuing him a false misbehavior report; and (8) all Defendants were in a conspiracy to retaliate against him.

### III. DISCUSSION

Defendants move to dismiss the following claims: (1) conspiracy claim; (2) due process and equal protection claims against Defendants Pelo and Young based on the deduction of $1,660.20

from his inmate account; (3) due process claims against Defendants Pelo and Fraser based on the allegedly false misbehavior and IPC reports; and (4) retaliation claims against Defendants Eastman, Fraser, Miller, and McKeighan.  Dkt. No. 17-1, Defs.' Mem. of Law.  Defendants do not move to dismiss any of Plaintiff's other claims.

## A.  Conspiracy Claim

Plaintiff generally alleges that the Defendants conspired to retaliate against him for writing a grievance against C.O. Koegh and for stating that he intended to write a grievance for the deduction from his inmate account.  *See* Compl. at ¶ 59.  Plaintiff alleges that Defendant Pelo "consulted with" Defendant Young regarding the deduction from Plaintiff's inmate account, *id.* at ¶ 23; that Pelo "knowingly conspired" with Defendants Fraser and Eastman to issue him the false IPC report, *id.* at ¶¶ 34-35; that Defendant McKeighan conspired in retaliating against Plaintiff with Pelo, Eastman, and Fraser by affirming Plaintiff's IPC placement, *id.* at ¶ 47; and that Defendants Eastman and Miller conspired with Pelo in upholding Plaintiff's IPC placement, *id.* at ¶ 55.

To support a conspiracy claim under § 1983, a plaintiff must demonstrate (1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Ciambriello v. Cty. of Nassau,* 292 F.3d 307, 324-25 (2d Cir. 2002).  In addition, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly addressed." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

Here, even reading the Complaint liberally, the Court finds that Plaintiff's allegations are insufficient to plausibly plead a conspiracy claim.  Plaintiff's belief that Defendants conspired

against him is based entirely on his own conjecture and speculation. Plaintiff pleads no facts that plausibly suggest that Defendants reached an agreement to retaliate against him. Accordingly, to the extent the Complaint states a conspiracy claim under 42 U.S.C. § 1983, the Court recommends that it be **dismissed**.

## B. Due Process Claims

Defendants argue that Plaintiff's due process claim against Defendants Pelo and Young based on the deduction from his inmate account should be dismissed because Plaintiff has an adequate post-deprivation remedy in the Court of Claims, and alternatively, has no property interest in his prison wages. Defs.' Mem. of Law at pp. 7-9. Defendants further argue that to the extent Plaintiff states due process claims based on allegedly false misbehavior and IPC reports against Defendants Pelo, Fraser, and Eastman,[2] those claims should be dismissed because there is no constitutional to be free from being falsely accused in a misbehavior report. *Id.* at pp. 10-12.

### 1. False Misbehavior and IPC Reports

The Court first addresses Plaintiff's claims based on the allegedly false misbehavior and IPC reports. Defendants correctly state the law that prison inmates do not have a "constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 950 (2d Cir. 1986). In *Freeman*, the Second Circuit held that the Constitution merely guarantees inmates "the right not to be deprived of a protected liberty interest without due process of law." *Id.* at 951. "As long as prison officials grant the inmate a hearing and an opportunity to be heard, the 'filing of unfounded

---

[2] Although Defendants only discuss Plaintiff's claim based on the false IPC report as against Defendant Fraser, it is also properly stated against Defendant Eastman because Plaintiff alleges that Eastman ordered Fraser to write the false report against Plaintiff. *See* Compl. at ¶ 33.

charges d[oes] not give rise to a *per se* constitutional violation actionable under section 1983.'" *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) (quoting *Freeman v. Rideout*, 808 F.2d at 953). Thus, to the extent Plaintiff seeks to state a claim based on false accusations by Defendants Pelo, Fraser, and Eastman, such claims would be appropriately dismissed.[3]

In this case, however, Plaintiff not only alleges that Pelo, Fraser, and Eastman falsely accused him, but that they did so in *retaliation* for filing a grievance and for stating that he intended to file a grievance. The Second Circuit has held that "a prisoner has a substantive due process right not to be subjected to false misconduct charges as retaliation for his exercise of a constitutional right such as petitioning the government for redress of his grievances, and that this right is distinct from the procedural due process claim at issue in *Freeman*." *Jones v. Coughlin*, 45 F.3d 677, 679-80 (2d Cir. 1995) (citing *Franco v. Kelly*, 854 F.2d at 589). Plaintiff's claims against Pelo, Fraser, and Eastman are therefore appropriately viewed as retaliation claims.[4] Since Defendants move to dismiss Plaintiff's retaliation claims against Fraser and Eastman, the Court will discuss those claims further below.

### 2. Deduction from Inmate Account

The Court now turns to Plaintiff's claim that Defendants Young and Pelo deducted money from his inmate account without due process. "As a general rule, the resolution of a procedural due

---

[3] In connection with the misbehavior report issued by Defendant Pelo, the Court further notes that Plaintiff alleges for the first time in his Response that "extreme due process violations" occurred at his hearing. Pl.'s Resp. at p. 5. None of those allegations, however, are contained in the Complaint, and therefore are not appropriately considered by the Court at this time.

[4] The Supreme Court has instructed that "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Thus, Plaintiff's claims based on allegedly false reports filed against him are properly analyzed under the standards of the First Amendment.

process claim requires a determination of whether the plaintiff was deprived of a constitutionally protected interest and, if so, whether the procedures used were adequate given the nature of the deprivation contemplated." *Morgan v. Ward*, 699 F. Supp. 1025, 1037 (N.D.N.Y. 1988) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).  Plaintiff alleges that he "received notice in the mail that $1,660.20 had been deducted from his account by the Department of Correction's Central Office."  Compl. at ¶ 17.  Plaintiff asserts that he had a property interest in the $1,660.20 and the deprivation thereof was without due process.  *Id.* at ¶ 23.

a.  Whether Plaintiff has Adequate Post-Deprivation Remedies

"Due process . . . is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  Generally, determining what process is due requires balancing: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; (3) the government's interest, including the possible burdens of alternative procedures." *O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *Farid v. Smith*, 850 F.2d 917, 924-25 (2d Cir. 1988).  "Applying this test, the Court has usually held that the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. at 127.

Yet, in *Hudson v. Palmer* and *Parratt v. Taylor*, "[t]he Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (citing *Hudson v. Palmer*, 468 U.S. 517, 532 (1984) & *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)).  In the latter case, "there *is no* constitutional violation

(and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *Id.* at 881; *see also Diaz v. Coughlin*, 909 F. Supp. 146, 150 (S.D.N.Y. 1995) ("Whether negligent or deliberate, the destruction of an inmate's property caused by a prison officer's unauthorized conduct does not give rise to a claim under the Due Process Clause if the state provides that inmate with an adequate postdeprivation remedy."). "When a deprivation occurs because of a random, arbitrary act by a state employee 'it is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. The loss of property . . . is . . . almost . . . [invariably] beyond the control of the State. Indeed, in most cases is it not only impracticable, but impossible, to provide a meaningful hearing before the deprivation.'" *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d at 880 (quoting *Hudson v. Palmer*, 468 U.S. at 532).

Defendants argue that, under *Hudson* and *Parratt*, Plaintiff's due process claim should be dismissed because he has an adequate post-deprivation remedy in the Court of Claims. Defs.' Mem. of Law at p. 7. The Second Circuit has held that New York "affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001). Plaintiff responds by contesting the availability of state remedies and whether such remedies afford the same relief as an action under 42 U.S.C. § 1983. Pl.'s Resp. at p. 3; Pl.'s Sur-Reply at pp. 1-2.

The more fundamental issue, however, is whether Defendant Young's and Pelo's actions were "random and unauthorized." "[T]he reasoning of *Parratt* and *Hudson* emphasizes the State's inability to provide predeprivation process because of the random and unpredictable nature of the deprivation." *Zinermon v. Burch*, 494 U.S. at 131. In *Parratt*, an inmate's package was negligently

lost in the mail, *Parratt v. Taylor*, 451 U.S. at 530; in *Hudson*, an inmate alleged that a correction officer intentionally destroyed certain of his property during a cell search, *Hudson v. Palmer*, 468 U.S. at 519-20.  It is not at all obvious to the Court that the deprivation Plaintiff contends occurred here—the retroactive reduction of an inmate's wages—is similarly unpredictable.

Further, the Supreme Court has held "that government actors' conduct cannot be considered random and unauthorized within the meaning of *Parratt* if the state delegated to those actors 'the power and authority to effect the very deprivation complained of . . . [and] the concomitant duty to initiate the procedural safeguards set up by state law,' even if the act in question 'was not . . . sanctioned by state law.'"  *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006).  The Second Circuit has held that the "random and unauthorized" exception "does not apply where the government actor in question is a high-ranking official with 'final authority over significant matters.'"  *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (quoting *Burtnieks v. City of New York*, 716 F.2d 982, 988 (2d Cir. 1983)).  Here, there is a plausible reading of the Complaint that Defendants Young and Pelo were high-ranking officials with authority to determine his wage grade and order a deduction from Plaintiff's account.  Young, Plaintiff alleges, is the Acting Director of DOCCS' Office of Guidance and Counseling, and Pelo is Grievance Supervisor at Great Meadow.  Compl. at ¶¶ 5 & 10.  While Plaintiff does not make any allegations about their responsibilities or authority, it is not apparent how they could have ordered his account to be reduced unless they had authority to do so.

In light of these issues, the Court believes that it is not appropriate to resolve whether the deprivation of Plaintiff's property was "random and unauthorized" in the context of a FED. R. CIV. P. 12(b)(6) motion.  Accordingly, the Court cannot determine whether "the availability of

*-13-*

postdeprivation procedures will . . . ipso facto, satisfy due process." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d at 880.

                b. Whether Plaintiff has Pled a Protected Property Interest

Defendants argue in the alternative that Plaintiff does not have a property interest in "any specific wages for work performed at a DOCCS facility." Defs.' Mem. of Law at p. 8. Defendants assert that "an inmate does not have a federal constitutional right to a specific wage grade while incarcerated in a correctional facility." *Id.* at p. 9 (quoting *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1054 (S.D.N.Y. 1987)).

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). New York Correction Law § 187 provides that "[e]very inmate confined in a state correctional facility . . . may receive compensation for work performed during his or her imprisonment." N.Y. CORRECT. § 187(1). Additionally, "[t]he department shall prepare graded wage schedules for inmates, which schedules shall be based upon classifications according to the value of the work performed by each." *Id.* at § 187(3).

Defendants correctly argue that Plaintiff does not have a legitimate expectation of receiving a specific wage grade. *See Salahuddin v. Coughlin*, 674 F. Supp. at 1054-56 (finding that inmate did not have a legitimate expectation of continuing at the same wage grade when he was transferred to a new facility). Plaintiff, however, is not claiming a property interest in his wage grade, *see* Pl.'s Resp. at p. 4; rather, he is claiming a property interest in two years worth of wages that he had

already received and were held in his inmate account. Correction Law § 187 vests inmates "with some property interest for work already performed." *Rudolph v. Cuomo*, 916 F. Supp. 1308, 1316 (S.D.N.Y. 1996). The Court therefore finds that Plaintiff adequately pleads that he had a property interest in wages he has already received.

Based on the foregoing, the Court finds that Plaintiff adequately pleads a due process claim arising from the deduction from his inmate account. The Court accordingly recommends that Defendants' Motion to Dismiss Plaintiff's due process claim be **denied**.

## C.  Equal Protection Claim

Plaintiff also asserts that the deduction from his inmate account violated his equal protection rights on the theory that "he was singled out for retaliation for no other reason except for his position as a Inmate Grievance Representative, and thus was uniquely situated compared to other inmates." Compl. at ¶¶ 25 & 64. Plaintiff states that he brings his equal protection claim on a "class of one" theory. *Id.* at ¶ 64.

"The equal protection clause directs state actors to treat similarly situated people alike." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Generally, the equal protection clause protects "suspect classes and fundamental interests against inequitable treatment, but other types of inequities and classifications may be justified by a showing of mere rationality." *LeClair v. Saunders*, 627 F.2d 606, 611 (2d Cir. 1980). However, "equal protection claims can be brought by a 'class of one' where a plaintiff alleges that she has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 362-63 (2d Cir. 2002) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S.

562, 564 (2000)).  A class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006); *see also Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005) ("[T]he [plaintiffs] must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects." (quoting *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002)).  "The purpose of requiring sufficient similarity is to make sure that no legitimate factor could explain the disparate treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012).

A plaintiff must identify, "beyond a speculative level, other individuals with whom he can be compared for equal protection purposes." *Diaz v. Burns*, 2013 WL 5951866, at *4 (W.D.N.Y. Nov. 6, 2013); *see also Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (discussing pleading standard for class-of-one equal protection claim).  Here, Plaintiff alleges that the other inmates who worked in the Grievance Office were similarly situated to him because they also received a higher wage rate—$21.70 per week—than inmates normally received.  Compl. at ¶ 19.  Yet Plaintiff was the only inmate whose account was reduced.  *Id.* at ¶ 24.  While Defendants argue that Plaintiff's allegations fail to establish his "identity in *all* relevant respects" to the other inmates in the Grievance Office, the Court finds that his factual allegations plausibly suggest that he was similarly situated to the other inmates he worked with.

Nonetheless, the analysis does not end there because in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), the Supreme Court found that "some forms of state action . . . by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Engquist*, 553 U.S. at 603.  In such areas, the Court stated, "the rule that people

-16-

should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted." *Id.*  The Court found that "[t]his principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized." *Id.* at 604.  The Court therefore held "that the class-of-one theory of equal protection has no application in the public employment context." *Id.* at 607.

In *Analytical Diagnostics*, the Second Circuit explored whether *Engquist*'s holding might apply outside of the public employment context. *See Analytical Diagnostics Labs, Inc. v. Kusel*, 626 F.3d 135, 141-42 (2d Cir. 2010).  The Circuit concluded that "*Engquist* does not bar all class-of-one claims involving discretionary state action," but that "there may be some circumstances where *Engquist* is properly applied outside of the employment context." *Id.*  In delineating the scope of *Engquist*, the Circuit emphasized the "crucial difference . . . between the government exercising the power to regulate or license, as lawmaker, and the government acting as proprietor, to manage its internal operations." *Id.* (quoting *Engquist*, 553 U.S. at 598).  "The 'government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" *Id.* (quoting *Engquist*, 553 U.S. at 598).

In this case, however, the Court finds that Plaintiff's allegations fall squarely within *Engquist*'s holding.  Defendants Young's and Pelo's decision to reduce Plaintiff's wage grade is the type of "subjective and individualized" employment decision described in *Engquist* and therefore is not a basis for class-of-one equal protection claim. *See Johnson v. Pallito*, 2014 WL 1922728, at *3 (D.Vt. May 14, 2014) (finding that "employment in correctional facility is analogous to the public employment at issue in *Engquist*"); *Lyons v. Bisbee*, 2011 WL 2313652, at *17 (D. Nev. Apr.

7, 2011) (finding that decision not to pay inmate did not give rise to an equal protection claim because "Plaintiff's pay level equates to a personnel decision").    Accordingly, the Court recommends that Plaintiff's class-of-one equal protection claim be **dismissed** for failure to state a claim.

### D.  Retaliation Claims

Finally, Defendants argue that Plaintiff's retaliation claims against Defendants Eastman, Fraser, Miller, and McKeighan should be dismissed.[5]  Defs.' Mem. of Law at pp. 15-16.  Plaintiff alleges that these Defendants retaliated against him by placing him in IPC, and specifically that: (1) Defendant Eastman ordered that he be placed in IPC, Compl. at ¶ 30; Defendant Fraser issued him a false IPC report at the orders of Defendant Eastman, *id.* at ¶¶ 33-34; (2) Defendant McKeighan denied him due process at his IPC and IGRC impeachment hearings, *id.* at ¶¶ 47-48; and (3) Defendants Miller and Eastman upheld his IPC placement, *id.* at ¶¶ 54-55.  Defendants argue that Plaintiff has failed to allege a causal connection between these actions and any protected conduct on the part of Plaintiff.  Defs.' Mem. of Law at p. 16.

To state a First Amendment retaliation claim, an inmate must demonstrate (1) he or she was engaged in constitutionally protected speech or conduct, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity.  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).  If the plaintiff carries this initial burden, the burden then shifts to the defendants to show that they would

---

[5] Defendants do not move to dismiss Plaintiff's retaliation claims against Pelo and Young.

have taken the same action absent the retaliatory motive.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citation omitted); *Dawes v. Walker*, 239 F.3d at 491("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.").  Thus, "a complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone."  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  On the other hand, in the case of a retaliation claim "supported by specific and detailed factual allegations" or "facts giving rise to colorable suspicion of retaliation," the plaintiff should be permitted to proceed to discovery.  *Id.*

Plaintiff claims that the Defendants placed him in IPC in retaliation for stating that he intended to file a grievance regarding the deduction from his inmate account.  *See* Compl. at ¶ 30.  The filing of a grievance is protected conduct, *see Graham v. Henderson*, 89 F.3d at 80, and courts have also treated "an inmate's stated intent to file a grievance . . . as protected conduct."  *Brown v. Brown*, 2010 WL 1186569, at *5 (N.D.N.Y. Jan. 19, 2010) (citing cases).  Therefore, as to the first prong, Plaintiff has adequately alleged that he engaged in a protected conduct.  As to the second prong, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493).  Plaintiff's allegations regarding his placement in IPC are sufficient to determine for the

purposes of this Motion that he suffered an adverse action.  Plaintiff alleges that he was in IPC for eighty-four days, during which he was deprived of all privileges and permitted only one hour of recreation per day.  Compl. at ¶¶ 60 & 63.  This is sufficient to infer that a similarly situated inmate of ordinary firmness would have been deterred from exercising his constitutional rights.  *See Allah v. Poole*, 506 F. Supp. 2d 174, 186-87 (W.D.N.Y. 2007).

With respect to the third prong, a plaintiff must allege facts "supporting an inference of a causal connection between the adverse actions and the protected conduct."  *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002).  In determining the existence of a causal connection, courts may consider the following factors: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) the prisoner's prior good disciplinary record; (3) the prisoner's vindication at his disciplinary hearing; and (4) the defendants' statements regarding their motive for the discipline.  *See Colon v. Coughlin*, 58 F.3d at 872-73.  Direct evidence is not required and a plaintiff may meet this burden by presenting "sufficiently compelling" circumstantial evidence of a retaliatory motive.  *Bennett v. Goord*, 343 F.3d 133, 138-39 (2d Cir. 2003).  Plaintiff's allegations in this regard are thin, but sufficient at this stage to infer that Plaintiff's placement in IPC was improperly motivated.  Specifically, Plaintiff alleges a close temporal proximity between when he stated an intention to file a grievance about his inmate account and his placement into IPC; Plaintiff claims that within a half-hour of stating that he was going to file a grievance, Defendant Eastman ordered him to be placed in IPC.  Plaintiff further alleges that the Defendants kept him in IPC based on the pretext that other inmates would blame Plaintiff for voicing complaints about the deduction from his inmate account when deductions were made from their accounts.  Compl. at ¶ 35.  Plaintiff claims that this reason was pretextual because he had been told that he was the only inmate whose

account was going to be reduced. *Id.* at ¶¶ 29 & 36. Plaintiff alleges that Defendants Eastman and Miller upheld his placement in IPC on the basis that he had been labeled a "rat" by other inmates, although there was no evidence of this. *Id.* at ¶ 55.

Plaintiff's allegations are sufficient to infer a causal connection between his protected activity and placement in IPC. Although Defendants are correct that generally a grievance filed against one defendant is an insufficient basis to establish another defendant's retaliatory motive, *see Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011), the issue at this point is simply whether Plaintiff has pled facts plausibly suggesting a causal connection. "A plaintiff can establish a causal connection that suggests retaliation by showing that the protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

Accordingly, the Court recommends that Defendants' Motion to Dismiss Plaintiff's retaliation claims against Defendants Eastman, Fraser, Miller, and McKeighan be **denied**.

### E. Summary

In summary, if the above recommendations are accepted, Plaintiff's conspiracy and equal protection claims are dismissed, and the following claims survive in this action: (1) Defendants Pelo and Young violated his right to due process when they deducted $1,660.20 from his inmate account; (2) Defendants Pelo and Young retaliated against him when they deducted $1,660.20 from his inmate account; (3) Defendants Fraser and Eastman retaliated against him by issuing him a false IPC report; (4) Defendant McKeighan violated his right to due process during the IPC and IGRC impeachment hearings; (5) Defendant McKeighan retaliated against him by affirming his IPC placement; (6) Defendants Eastman and Miller retaliated against him by upholding his IPC placement; and (7) Defendant Pelo retaliated against him by issuing him a false misbehavior report.

## IV.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 17) **GRANTED in part and DENIED in part** consistent with the above summary; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[6] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).


Date:    March 24, 2017
         Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).