**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

FREDERICK DIAZ,

                                        Plaintiff,

                                                                9:15-CV-776
                    v.                                          (DNH/DJS)

STEPHANIE PELO, *et al.*,

                                        Defendants.

**APPEARANCES:**                            **OF COUNSEL:**

FREDERICK DIAZ
Plaintiff, *Pro Se*
86-B-2129
Elmira Correctional Facility
P.O. Box 500
Elmira, NY  14902

HON. LETITIA JAMES                          RYAN L. ABEL, ESQ.
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

### I.  INTRODUCTION

    Plaintiff commenced this civil rights action *pro se* on June 25, 2015.  Dkt. No. 1,

Compl.  Upon the Court's initial review of the Complaint, it was permitted to proceed.

Dkt. No. 2.  Defendants moved to dismiss, and the Court granted in part and denied in

part the Motion, allowing the following claims to proceed: (1) Defendants Pelo and Young violated Plaintiff's right to due process when they deducted $1,660.20 from his inmate account; (2) Defendants Pelo and Young retaliated against him when they deducted $1,660.20 from his inmate account; (3) Defendants Fraser and Eastman retaliated against him by issuing him a false IPC report; (4) Defendant McKeighan violated his right to due process during the IPC and IGRC impeachment hearings; (5) Defendant McKeighan retaliated against him by affirming his IPC placement; (6) Defendants Eastman and Miller retaliated against him by upholding his IPC placement; and (7) Defendant Pelo retaliated against him by issuing him a false misbehavior report.  Dkt. Nos. 22 & 24.

Defendants have now moved for summary judgment as to all of Plaintiff's claims. Dkt. No. 59.  Plaintiff opposed the Motion, and cross-moved for summary judgment on his due process claims against Defendants Young, Pelo, and McKeighan, and his retaliation claims against Defendants Pelo and Fraser.  Dkt. No. 73.  Defendants submitted a reply in further support of their Motion for Summary Judgment and in opposition to Plaintiff's Cross-Motion for Summary Judgment.  Dkt. No. 75.

## A.  Summary of the Relevant Facts

On September 25, 2013, Plaintiff filed Grievance GM-56426-13 against Corrections Officer Keogh for allegedly harassing Plaintiff and for confiscating a

television from him.  Dkt. No. 59-7, Declaration of Rachel Young ("Young Decl."), ¶ 7; Dkt. No. 73-4, Pl.'s Opp. to Defs.' SMF, ¶ 2.[1]

On October 6, 2014, staff from Department of Corrections and Community Supervision ("DOCCS") Central Office notified Defendant Pelo that Plaintiff was overpaid.  Dkt. No, 59-12, Declaration of Stephanie Pelo ("Pelo Decl."), ¶ 13.  That same day, Thomas Forbes deducted $1,660.20 from Plaintiff's inmate account as a result of an alleged overpayment of wages in his role as an Inmate Grievance Representative ("IG Rep.").   Young Decl. at ¶¶ 14 & 18; Dkt. No. 59-11, Declaration of Phil Melecio ("Melecio Decl."), ¶ 17; Pl.'s Opp. to Defs.' SMF at ¶ 21.  On October 17, 2014, Plaintiff filed grievance GM-58537-14 regarding the deduction from his account.  Defs.' SMF at ¶ 40; Pl.'s Opp. to Defs.' SMF at ¶ 40.   Plaintiff and Defendant Pelo discussed the deduction; they disagree over who was present during the discussion and what Plaintiff said.  Pelo Decl. at ¶¶ 21, 25, & 26; Pl.'s Opp. to Defs.' SMF at ¶¶ 41-44.  Defendant Pelo encouraged Plaintiff to file a grievance regarding the deduction.  Pelo Decl. at ¶ 44; Pl.'s Opp. to Defs.' SMF at ¶ 52.  Defendants allege that because of Plaintiff's comments regarding the amount of money in his account and the possibility that DOCCS may also deduct funds from other inmates' accounts, in addition to other inmates accusing Plaintiff of being a "rat," Defendant Pelo became concerned for Plaintiff's safety.  Pelo Decl. at ¶¶ 41-50.   Plaintiff disagrees with this, contending that the other inmates were not

---

[1] Due to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record to ascertain the undisputed material facts, and will consider statements made by Plaintiff in his unsworn submissions.  *See White v. Williams*, 2016 WL 4006461, at *3 (N.D.N.Y. June 22, 2016), *report and recommendation adopted*, 2016 WL 4005849 (N.D.N.Y. July 25, 2016); *Shepherd v. Fischer*, 2015 WL 1246049, at *8 n. 22 (N.D.N.Y. Feb. 23, 2015), *report and recommendation adopted*, 2015 WL 1275298 (N.D.N.Y. Mar. 18, 2015).

concerned about funds being deducted from their accounts, and that Plaintiff is well-liked, and not considered a "rat."  Pl.'s Opp. to Defs.' SMF at ¶¶ 43-50.

Defendant Fraser, a Sergeant at Great Meadow, was informed of the concerns about Plaintiff's safety and also became concerned.  Dkt. No. 59-14, Declaration of Colin Fraser ("Fraser Decl."), ¶¶ 2, 13, & 18-20.  Plaintiff asserts that this is untrue.  Pl.'s Opp. to Defs.' SMF at ¶¶ 54-57.  On October 8, 2014, Defendant Fraser issued an Involuntary Protective Custody ("IPC") Recommendation requesting Plaintiff be placed in protective custody.  Fraser Decl. at ¶ 21; Pl.'s Opp. to Defs.' SMF at ¶ 58.  From October 21, 2014 to October 24, 2014, Defendant McKeighan conducted an IPC hearing to determine whether Plaintiff needed to be placed in Protective Custody.  Dkt. No. 59-16, Declaration of Kenneth McKeighan ("McKeighan Decl."), ¶ 7.  At the conclusion of the hearing, Defendant McKeighan determined that placing Plaintiff in IPC was warranted.  *Id.* at ¶ 29.  Plaintiff then interrupted Defendant McKeighan and yelled and cursed at him, and by varying accounts, either removed himself from the hearing room or was removed from the hearing room.  *Id.* at ¶¶ 31-32; Pl.'s Opp. to Defs.' SMF at ¶¶ 92-93.  As Facility Superintendent, Defendant Miller reviews IPC determinations, but Stephen G. Brandow, First Deputy Superintendent reviewed and signed off on the determination as Miller was unavailable.  Dkt. No. 59-24, Declaration of Christopher Miller ("Miller Decl.") at ¶¶ 7, 9-10.

After Plaintiff was removed from the hearing room following his IPC hearing, Defendant McKeighan conducted a hearing to determine whether Plaintiff should be removed from his position as an IG Rep. because inmates cannot work as IG Reps. while

in IPC.  McKeighan Decl. at ¶¶ 6-8 & 44.  Defendant McKeighan recommended that Plaintiff be removed from his position.  *Id.* at ¶ 45.

Every 30 days, pursuant to a DOCCS Directive, Plaintiff's IPC status was reviewed by a Correction Counselor, Defendant Eastman, and Defendant Miller.  Dkt. No. 59-22, Declaration of Rodney Eastman ("Eastman Decl."), ¶¶ 7-8; Miller Decl. at ¶¶ 12-13.  In November, Defendant Miller's Acting Superintendent and Defendant Eastman recommended that Plaintiff remain in IPC status.  Eastman Decl. at ¶¶ 16 & 21; Miller Decl. at ¶¶ 21-22.  In December, Defendant Miller and Defendant Eastman recommended that Plaintiff remain in the Special Housing Unit ("SHU"), where he had been placed for disciplinary reasons.  Eastman Decl. at ¶¶ 22-27; Miller Decl. at ¶¶ 23-28.  In January, Defendants Miller and Eastman again reviewed Plaintiff's status and recommended that Plaintiff be returned to IPC upon release from SHU.  Eastman Decl. at ¶¶ 28-32; Miller Decl. at ¶¶ 29-33.

On November 14, 2014, Defendant Pelo received letters from Plaintiff that she deemed harassing, and she wrote a misbehavior report.  Pelo Decl. at ¶¶ 45-46.  Plaintiff was found guilty of harassment, and placed in SHU for fifty-five days.  Dkt. No. 73-5, Exs. to Pl.'s Decl., pp. 135, 138, & 140.[2]

Prior to November 2014, Plaintiff never filed a grievance about any of the Defendants, but had orally complained to the Superintendent about Defendant Eastman

---

[2] Because they are not sequentially paginated, citations to the exhibits to Plaintiff's declaration are to the pagination automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

in 2012.  Dkt. No. 59-5, Ex. A to Haimson Decl., Pl.'s Dep., p. 116; Pl.'s Opp. to Defs.'

SMF at ¶ 169.

## II.  DISCUSSION OF DEFENDANTS' MOTION

### A.  Standard

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is

appropriate only where "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."   The moving party bears the burden to

demonstrate through "pleadings, depositions, answers to interrogatories, and admissions

on file, together with  [ ] affidavits, if any," that there is no genuine issue of material fact.

*F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific

facts showing that there is a genuine issue for trial, and cannot rest merely on allegations

or denials of the facts submitted by the movant.  FED. R. CIV. P. 56(c); *see also Scott v.*

*Coughli*n, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are

ordinarily not sufficient to defeat a motion for summary judgment when the moving party

has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522,

525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory

allegations subject to disregard . . . they are specific and detailed allegations of fact, made

under penalty of perjury, and should be treated as evidence in deciding a summary

judgment motion" and the credibility of such statements is better left to a trier of fact.

*Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d at 872).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B. Plaintiff's Due Process Claims

Defendants contend that Defendants Young and Pelo were not sufficiently personally involved in the deduction of Plaintiff's funds to be held liable for any related constitutional violation. Dkt. No. 59-2, Defs.' Mem. of Law, pp. 19-21.

*1. Whether Defendant Pelo was Personally Involved in the Deduction of Funds*

Defendants contend that Defendant Pelo had no involvement in the deduction of funds; she did not discover that Plaintiff was being overpaid or contact anyone in inmate accounts about recouping funds from Plaintiff's account. *Id.* Instead, John Antonelli noticed abnormalities in Plaintiff's payroll receipts, Laurie Fisher reviewed Plaintiff's account and concluded Plaintiff was overpaid, Phil Melecio directed that Thomas Forbes deduct the funds from Plaintiff's inmate account, and Thomas Forbes deducted the funds. *Id.* Plaintiff contends that Defendant Pelo was involved in the deduction, based upon her being cc'ed on an email regarding the deductions. Dkt. No. 73-1, Pl.'s Mem. of Law, p. 16.

Defendant Pelo describes in her declaration that she was the Inmate Grievance Program Supervisor at Great Meadow in October of 2014. Pelo Decl. at ¶ 2. In that capacity, Defendant Pelo signed payroll submission sheets of Inmate Grievance Reps. at Great Meadow. *Id.* at ¶ 3. On October 6, 2014, DOCCS Central Office notified her about the $1,660.20 overpayment. *Id.* at ¶ 13. Defendant Pelo did not independently discover that Plaintiff was being overpaid or suspect that anything was improper with his time sheets; she was not privy to inmate account information unless it related to a grievance, and she had no involvement in the payment of IG Reps.' wages or adjustments made to inmate accounts in the event of overpayment. *Id.* at ¶¶ 15, 17-18. She had "no involvement whatsoever" in the deduction. *Id.* at ¶ 20.

Plaintiff submits the email correspondence on which Defendant Pelo is copied as evidence that she was involved in the deduction. Exs. to Pl.'s Decl. at p. 12. Defendant

Pelo is cc'ed on an email instructing Thomas Forbes to start recouping funds from Plaintiff's account. This email, which does not indicate that Defendant Pelo played any role in the deduction of funds, does not suffice to overcome Defendant Pelo's sworn statement that she is not involved in the payment of wages or adjustments made to inmate accounts, and that she had no involvement whatsoever in the deduction. Plaintiff's assertions further demonstrate that Defendant Pelo only received information regarding his account and did not actively participate in the deduction. *See* Pl.'s Dep. at pp. 161-64 (testifying that Defendant Pelo told Plaintiff she knew the deduction would occur but did not know what "they" were going to do, and that after Plaintiff told her about the deduction she spoke with the Deputy Superintendent of Programs, and reported to Plaintiff that "they're looking into it."). The conversations Plaintiff recalls with Defendant Pelo indicate that she was not involved in the decision making regarding his account. Plaintiff's assertion that he does not believe she was not involved is unsupported.

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Plaintiff's speculation that Defendant Pelo was involved in the deduction based on a single email that she was cc'ed on amounts to speculation and is insufficient to overcome the Motion on this claim. *See Brown v. Artus*, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009).

Plaintiff also asserts that Defendant Pelo was personally involved because she failed to act on information that unconstitutional acts were occurring by not informing Defendant Young that Plaintiff had not been overpaid in error and that a hearing was required before they could take his funds. Pl.'s Mem. of Law at p. 16. The failure to act on information indicating that unconstitutional practices are occurring can be a basis to find a supervisor personally involved in a violation. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d at 501-02. However, there is no allegation that Defendant Pelo is Defendant Young's supervisor or has any authority over her. There is no proof that Defendant Pelo has any control over inmate accounts, payment, and adjustments to accounts; indeed, she states that she does not have any such control or involvement. Pelo. Decl. at ¶¶ 17-18. As such, there is no evidence that Defendant Pelo had any obligation or ability to act on information regarding inmate accounts, and personal involvement cannot be attributed to her based upon an alleged failure to act on information.[3]

---

[3] Plaintiff also briefly asserts that he needs more discovery regarding Defendant Pelo, but does not identify what information that would be. Pl.'s Mem. of Law at p. 16. Plaintiff does not provide an affidavit identifying why "for specified reasons, [he] cannot present facts essential to justify [his] opposition" as required by the Federal Rules of Civil Procedure; however, the Court will construe his assertion that he needs additional discovery as satisfying that requirement and consider the assertion nonetheless. FED. R. CIV. P. 56(d).

While "[t]he judge does [ ] have discretion to postpone ruling on a defendant's summary judgment motion if the plaintiff needs additional discovery to explore 'facts essential to justify the party's opposition,'" *Crawford-El v. Britton*, 523 U.S. 574, 599 n. 21 (1998), the Court need not allow additional discovery on the basis of a vague and speculative assertion that it is needed. *Jeter v. Bd. Of Educ. Of the City of New York*, 2004 WL 5584463, at *12-13 (E.D.N.Y. Mar. 30, 2004) ("[Plaintiff's] request is a bare assertion that he needs additional discovery time 'to offer the court more details' . . . [He] does not mention what details will be obtained or how they will be obtained."); *Caruso v. City of New York*, 1999 WL 408616, at *6 (finding plaintiff had not made a showing that additional discovery was needed where plaintiff did not identify what discovery was needed, where none had been conducted). Plaintiff's speculative assertion provides no grounds for denying the Motion on the basis that Plaintiff needs more evidence.

The Court therefore recommends that Plaintiff's due process claim against Defendant Pelo be dismissed.[4]

2. *Whether Defendant Young was Personally Involved in the Deduction of Funds*

Defendants also contend that Defendant Young was not personally involved in the deduction of Plaintiff's funds. In her declaration, Defendant Young states that she supervised Ms. Fisher, who reviewed Plaintiff's inmate account and payroll records, concluding that Plaintiff had been overpaid by $1,660.20. Young Decl. at ¶¶ 12-14. Ms. Fisher informed Defendant Young that Plaintiff had been overpaid, and Defendant Young informed Phil Melecio, who then directed Thomas Forbes to deduct the funds. *Id.* at ¶¶ 15-18. Defendant Young had no further involvement in this "strictly [ ] accounting issue." *Id.* at ¶¶ 20-21.

In his Opposition, Plaintiff attaches an email from Defendant Young in which she informs staff of the overpayment. Exs. to Pl.'s Decl. at p. 11. Plaintiff contends that Defendants' assertions are belied by Defendant Young's email in which she "ordered both Melecio and Forbes to establish 'an advance to recoup the overpayment.'" Pl.'s Mem. of Law at p. 4. Plaintiff notes that after receiving Defendant Young's email, Thomas Forbes immediately ordered his subordinate to establish an advance to recoup the overpayment, and that Young's instruction to critically review payroll processes "means that Young was very cognizant as to how inmates got paid." *Id.* Plaintiff also contends that Defendants' assertions regarding Defendant Young's limited role are invalid because she

---

[4] Because the Court recommends finding that Defendant Pelo was not personally involved in the deduction of funds from Plaintiff's account, the Court does not reach Defendants' argument that Defendant Pelo is entitled to qualified immunity on this claim.

would not have simply relayed information from Fisher without questioning it, and because she would not have considered Plaintiff's pay to have been in error since it had been ongoing for years.  Pl.'s Mem. Of Law at pp. 3-4.

In Defendant Young's email to Phil Melecio and Thomas Forbes, cc-ing a number of people, she stated, "In responding to the above grievance, the attached was calculated and requires establishment of an advance to recoup the overpayment.  Pls notify John Antonelli and this office of corrective action."  Exs. to Pl.'s Decl. at p. 11.  Defendant Young then outlines the incorrect payments made to Plaintiff, concluding "All told, this inmate owes DOCCS $1,660.20 for the period 5/3/12 to 7/1/14.  Please critically review payroll processes which require multiple layers of staff review/approval.  All payroll sheets should be analyzed to ensure compliance with applicable policies and Directives."  *Id.*  Thomas Forbes forwarded the e-mail to Christina Young, instructing her to "[k]indly proceed and establish an advance to recoup the overpayment," and Phil Melecio forwarded the email to Thomas Forbes, stating "Please start recouping monies from inmate."  *Id.* at pp. 11-12.  Plaintiff also points out that the Bookkeeping Adjustment Notification to Plaintiff provided that his account had been decreased, "for the following reason: wages – per Albany's direction."  *Id.* at p. 15.

Construed in the light most favorable to the non-movant, it appears that Defendant Young provided Mr. Forbes and Mr. Melecio with specific errors that had been made and action that needed to be taken, with instruction to see that the action be taken regarding Plaintiff's account.  Then, "per Albany's direction"—which may refer to Defendant Young—funds were deducted from Plaintiff's account.  Thus, Defendants' assertion that

- 12 -

Defendant Young "merely forwarded Ms. Fisher's calculations on to Mr. Melecio" is not supported by the record when viewed in the light most favorable to Plaintiff, and it is not clear that Defendant Young was not personally involved in the deduction of funds from Plaintiff's account, especially given Young's statement that the situation "requires establishment of an advance to recoup the overpayment." Exs. to Pl.'s Decl. at p. 14.

Defendants cite cases standing for the proposition that simply forwarding information to another individual does not create personal involvement. The cases cited, however, deal with a supervisor's forwarding of a prisoner's grievance for staff to handle without doing any of his own investigation or analysis, *Rivera v. Fischer*, 655 F. Supp.2d 235, 238 (W.D.N.Y. Sept. 18, 2009), *Silvagnoli v. Fischer*, 2010 WL 1063849, at *8 (N.D.N.Y. Mar. 1, 2010), and a dental assistant relaying instructions provided by a dentist, *Reynolds v. Ternullo*, 1985 WL 2153, at *3 (S.D.N.Y. July 26, 1985). In this case, it appears that Defendant Young personally provided instruction to deduct funds from Plaintiff's account and an explanation of the basis for it, which was then complied with. This does not appear to be a case in which Defendant Young either had someone else handle the matter entirely or had no authority to handle the matter herself. There are genuine issues of material fact as to Defendant Young's personal involvement in the deduction of funds and the Court recommends this portion of the Motion be denied.

Defendants also contend that Defendant Young is entitled to qualified immunity on the basis that Plaintiff's funds were deducted pursuant to DOCCS Directive 2788 and DOCCS' Inmate Accounts ICAS Training Packet. Defs.' Mem. of Law at p. 36; Young Decl. at ¶ 10; Dkt. No. 59-9, Ex. B to Young Decl., pp. 1 & 4.

Defendants do not offer any authority for their assertion that the fact that a defendant was acting pursuant to a DOCCS policy alone entitles her to qualified immunity and the law is to the contrary. *See Jacoby v. Cty. of Oneida New York*, 2009 WL 2971537, at *24 (N.D.N.Y. Sept. 11, 2009) (adopting Order and Report-Recommendation) ("[E]ven if there existed a deprivation 'policy,' the fact that defendants were acting pursuant to an unconstitutional policy does not mean that they were not violating a 'well-established' right."). The Court recommends denying summary judgment on this basis.[5]

3.  *Whether Plaintiff Received All of the Process He was Due at his IPC and IGRC Hearings*

a.  *The IPC Hearing*

Plaintiff alleges that he was not provided due process in his IPC or IGRC hearings. As to his IPC hearing, Plaintiff contends that he was not provided a fair and impartial hearing officer, and takes issue with the hearing determination and the written disposition. Pl.'s Mem. of Law at p. 17. Plaintiff alleges that he was denied a fair and impartial hearing officer because the evidence did not warrant Plaintiff's IPC placement. *Id.*

---

[5] Where the state of the law is "at best undeveloped," it could be reasonable for Defendant to rely on the DOCCS policies to participate in the deduction of Plaintiff's funds without providing him process. *Wilson v. Layne*, 526 U.S. 603, 617 (1999). However, "[s]uch a policy . . . could not make reasonable a belief that was contrary to a decided body of case law." *Id.*

    Plaintiff's property interest in funds already earned was "clearly established" at the time of the deduction because the Second Circuit's decisions, at a minimum, "clearly foreshadow" such a ruling on the issue. *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000). In particular, the Second Circuit had stated that "Section 187 of N.Y. Correct. Law, which provides for the payment of wages based on work performed, and DOCS' longstanding policy of paying inmates for their labor creates an entitlement to these earnings." *Allen v. Cuomo*, 100 F.3d 253, 261 (2d Cir. 1996); *see also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it."). "[D]ue process ordinarily requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Hodel v. Virginia Surface Min. and Reclam. Ass'n, Inc.*, 452 U.S. 264, 299 (1981) (citations omitted). The policy does not make reasonable actions that may otherwise be contrary to this decided body of case law.

Specifically, Plaintiff alleges that Defendant McKeighan was not impartial because he had been ordered by Defendant Eastman, a high-ranking staff member, to write the IPC report; as a result, Defendant McKeighan did not take into account anything at the hearing that disputed Plaintiff's need for IPC placement. *Id.* at pp. 17-18. Plaintiff contends that the determination is based on unreliable evidence because it was "wholly fabricated" in response to Plaintiff's statement that he was going to file a grievance regarding his deducted funds. *Id.* at p. 18. Plaintiff further asserts that Defendant McKeighan never considered Plaintiff's objections regarding the validity of the evidence provided for the hearing. *Id.* at pp. 18-19. As to the hearing determination and written disposition, Plaintiff contends that there was no reliable evidence supporting the determination, and that Defendant McKeighan ignored the evidence presented by Plaintiff at the hearing. *Id.* at pp. 20-21.

IPC is a form of "administrative segregation, as opposed to disciplinary confinement." *Tavares v. Amato*, 954 F. Supp. 2d 79, 95 (N.D.N.Y. 2013). Assuming a liberty interest in remaining free from administrative segregation, "[a]dministrative segregation is not punitive, and thus is governed by less restrictive procedural protections than those required under *Wolff*" when an inmate is facing significant disciplinary punishment. *Colon v. Annucci*, 344 F. Supp. 3d 612, 636-37 (S.D.N.Y. 2018); *see Wolff v. McDonnell*, 418 U.S. 539 (1974). In determining whether a prisoner should be placed in administrative segregation, prison officials "have wide latitude in the procedures they deploy," and only "must provide some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to

- 15 -

transfer him to Ad Seg, although not necessarily a full hearing." *Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017) (internal quotation marks and citations omitted). "Once that has occurred, prison officials need only conduct an informal, nonadversary evidentiary review of whether the confinement is justified. Their final Ad Seg decision may turn largely on purely subjective evaluations and on predictions of future behavior." *Id.* (internal quotation marks and citations omitted); *see also Parson v. Miller*, 2018 WL 4233810, at *5 (N.D.N.Y. May 25, 2018), *report and recommendation adopted*, 2018 WL 4228427 (N.D.N.Y. Sept. 5, 2018).

Here, Plaintiff was "informed of the reasons for his eventual placement and was afforded an opportunity to express his views." *Wheeler-Whichard v. Roach*, 468 Fed. Appx. 28, 30 (2d Cir. 2012) (affirming finding that plaintiff received all the process he was due where he "was informed that he would be placed in [administrative segregation] if he refused to participate in the offered programs. Prior to his transfer, [the plaintiff] sent the Chairperson a letter explaining that he had refused to accept the offered programs due to his safety concerns."). Plaintiff was served with a copy of the IPC Recommendation twelve days before the hearing, received assistance for the hearing, and was given the opportunity to call witnesses and to present testimony regarding why he should not be placed in IPC. McKeighan Decl. at ¶¶ 12-27; Pl.'s Opp. to Defs.' SMF at ¶¶ 64-86. Defendant McKeighan read his findings into the record and provided Plaintiff a written explanation of his disposition. *Id.* at ¶ 30; Pl.'s Opp. to Defs.' SMF at ¶¶ 89-90. As such, Plaintiff was provided notice and an opportunity to present his views to Defendant McKeighan, who then performed an evidentiary review of whether

administrative segregation was warranted. Therefore, Plaintiff was provided all the process he was due.[6]

### b. The IGRC Hearing

Plaintiff alleges that he was denied due process in connection with his IG Rep. removal hearing. He alleges that his notice of the hearing failed to provide proper notice of the charges against him by failing to include references to the sections of the IGRC Code of Ethics which Plaintiff allegedly had violated. Pl.'s Mem. of Law at pp. 10 & 21-22. He also alleges that Defendant McKeighan never informed Plaintiff that he was going to conduct the impeachment hearing after the IPC hearing, and that Plaintiff was removed from the hearing room after his IPC hearing; as such, Plaintiff contends that he was never given the opportunity to oppose the impeachment.

To demonstrate Plaintiff's due process rights were violated, he must first establish that he had a liberty interest. *See Palmer v. Richards*, 364 F.3d 60, 64 n. 2 (2d Cir. 2004) ("Of course, a prisoner must first show that the state created a liberty interest, by statute or regulation, before he can show that the interest was infringed."). "As a matter of law, a prisoner has no protected liberty interest in a particular job assignment . . . . Thus, with regard to his removal from the IGRC, Plaintiff was not entitled to the procedural protections guaranteed by the Due Process Clause." *McNeil v. Keane*, 1998 WL 148364, at *3 (S.D.N.Y. Mar. 30, 1998) (quoting *Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996)) (internal quotation marks and citation omitted); *Thomas v. DeCastro*, 2018 WL

---

[6] Because the Court finds that Plaintiff received all the process he was due, it does not reach Defendants' contention that Defendant McKeighan is entitled to qualified immunity on this claim.

1322207, at *8-9 (S.D.N.Y. Mar. 13, 2018) (collecting cases in the Second Circuit finding there is no liberty interest in serving as an IG Rep.). The Court therefore recommends dismissing Plaintiff's due process claim against Defendant McKeighan.

"Even assuming, however, that plaintiff does have a constitutional right to hold this position unless removed pursuant to the procedures set forth [in the regulation], this right is not 'clearly established.'" *See Greene v. Coughlin*, 1995 WL 60020, at *15 (S.D.N.Y. Feb. 10, 1995). "No Supreme Court or Second Circuit case involving a prisoner's removal from the IGRC has held that due process rights adhere to such removal." *Thomas v. DeCastro*, 2018 WL 1322207, at *8-9. It therefore had not "been clearly established that removal from the IGRC *requires* notice and a hearing to comport with the Constitution" at the time of the events at issue. *Id.* As such, in the event the District Court finds there is a genuine issue of material fact as to whether Plaintiff was provided the process he was due for the IGRC hearing, the Court recommends finding that Defendant McKeighan is entitled to summary judgment on the basis of qualified immunity.

### C. Plaintiff's Retaliation Claims

Defendants contend that Plaintiff's retaliation claims should be dismissed because he has not demonstrated any causal connection between any protected conduct and adverse action by Defendants. Defs.' Mem. of Law at pp. 28-31. "To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse

action.'" *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). The plaintiff must establish that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). If the plaintiff carries this initial burden, the burden then shifts to the defendants to show that they would have taken the same action absent the retaliatory motive. *Id.* The Second Circuit has warned that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d at 13). This is the case because retaliation claims are "easily fabricated" and as a result "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.*

In a summary judgment motion, the non-movant must proffer "some tangible proof" of a causal connection between the protected activity and the adverse action and the plaintiff "may not rely on conclusory assertions of retaliatory motive." *Washington v. Cty. of Rockland*, 373 F.3d 310, 321 (2d Cir. 2004). "Courts assess four factors to determine whether the necessary causal link exists: '(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.'" *Pierrot v. Hahn*, 2017 WL 4221117, at *8 (N.D.N.Y. July 28, 2017), *report and recommendation adopted*, 2017 WL 4221072

(N.D.N.Y. Sept. 21, 2017) (quoting *Lunney v. Brureton*, 2007 WL 1544629, at *21 (S.D.N.Y. May 29, 2007)).

Plaintiff filed grievance GM-56426-13 on September 13, 2013 against C.O. Keogh, and grievance GM-58537-14 on October 17, 2014 regarding the deduction of funds from his inmate account.

### 1. Defendant Pelo

Plaintiff alleges that Defendant Pelo retaliated against him on October 6, 2014 by deducting money from his account, and on November 14, 2014, by writing a false misbehavior report regarding Plaintiff.  Plaintiff alleges that, "instead of responding to Plaintiff's complaint about the manner in which his grievance was responded to, [ ] Pelo instead wrote Plaintiff a contrived misbehavior report charging him with harassment, among other charges."  Pl.'s Mem. of Law at p. 14.  Plaintiff alleges that "[i]n order to try and justify her misbehavior report, Pelo took all of Plaintiff's complaints/inquiries about his grievances and wrote down parts of such out of context . . . when she clearly knew that this was not true.  Pelo did this for the sole purpose of furthering the retaliation against Plaintiff, this time for having complained about the way his grievances were being processed and handled."  *Id.*  At Plaintiff's Superintendent's hearing regarding the misbehavior report, he was found guilty of harassment, and was sentenced to two months in SHU.  *Id.*  Upon administrative appeal, the finding was reversed and expunged, "due to the circumstances surrounding the incident having raised questions as to Plaintiff's culpability."  Exs. to Pl.'s Decl. at p. 141.  Plaintiff asserts that he spent a total of 134

days away from the general population, with 36 of those days being in SHU.  Pl.'s Mem. of Law at p. 15.

As to the deduction of funds from Plaintiff's account, as discussed above, Defendant Pelo was not involved; as such, she did not take any adverse action and the Court recommends dismissing Plaintiff's retaliation claim because Defendant Pelo was not involved in the adverse action.  In addition, the deduction was made a year after Plaintiff filed the grievance against Keogh.  While the grievance was still being processed a year later, it was at the Central Office level, away from Great Meadow and Defendant Pelo.  Pelo Decl. at ¶ 11.  Moreover, Defendant Pelo was on maternity leave at the time his grievance was finalized.  *Id.* at ¶¶ 9-10.  In addition, Plaintiff provides no details to support his conclusory assertions regarding Defendant Pelo's motivations.  As such, Plaintiff's assertions would not provide a causal connection in terms of temporal proximity or motivation.  *See Ross v. Koenigsmann*, 2016 WL 11480164, at *19 (N.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 5408163 (N.D.N.Y. Sept. 28, 2016) (finding plaintiff's conclusory statements that defendants were in a conspiracy together to be insufficient to defeat summary judgment); *Flaherty v. Coughlin*, 713 F.2d 10 (2d Cir. 1983).  Plaintiff has not demonstrated that there is an issue of material fact that Defendant Pelo may have retaliated against him by deducting funds from his account.  Therefore, even if the Court had found Defendant Pelo played a role in the deduction, it would still recommend dismissing the related retaliation claim.

As to the misbehavior report against Plaintiff, Defendant Pelo wrote a misbehavior report regarding two letters and a note from Plaintiff that she asserted were harassing, on

November 14, 2014.[7]  Pelo Decl. at ¶¶ 45-46; Dkt. No. 59-13, Ex. A to Pelo Decl.  The letters had to do with Plaintiff's grievances; Plaintiff had also filed a grievance against Defendant Pelo at this point.  *See* Ex. A to Pelo Decl.; Pl.'s Dep. at p. 327.  In the report, Defendant Pelo charged Plaintiff with Harassing an Employee in Writing, Threats, Facility Correspondence Violation, and Interference with an Employee, because the correspondence contained hostile language, curses, insulted individuals in the Grievance Office, and did not contain questions about particular grievances.  Pelo Decl. at ¶¶ 46-50; Ex. A to Pelo Decl.  Defendant Pelo asserts that she wrote the misbehavior report based solely on the correspondence from Plaintiff, and not because of any grievance Plaintiff filed or threatened to file.  Pelo Decl. at ¶ 51.  As a result, Plaintiff was found guilty of harassment, and sentenced to time in SHU where he spent about fifty-five days.  Exs. to Pl.'s Decl. at pp. 135, 138, & 140.  On administrative appeal, Central Office reversed and expunged the guilty finding.  *Id.* at p. 141.

As to this claim, Defendants do not contend that Plaintiff's letters do not constitute protected activity, or that Plaintiff's movement to SHU did not constitute an adverse action.  *See* Defs.' Mem. of Law.  Considering the four factors to determine whether a causal link may exist, as to the first factor, Defendant Pelo received Plaintiff's letters that precipitated the misbehavior report the same day that she prepared the misbehavior report.  Ex. A to Pelo Decl. at p. 1.  The temporal proximity between the protected activity and alleged retaliation is strong.  As to the third factor, Plaintiff's guilty finding was reversed

---

[7] In his deposition, Plaintiff vacillated as to whether he intended to bring a retaliation claim against Defendant Pelo regarding the misbehavior report.  *See* Pl.'s Dep. at pp. 313-22.  Although at times he stated he did not intend to plead such a claim, because it is unclear, for purposes of completeness the Court will address this claim in full.

because "circumstances surrounding the incidents raise questions as to inmate's culpability." Exs. to Pl.'s Decl. at p. 141. It appears that Plaintiff was "vindicate[ed]" on this matter. As to Plaintiff's prior disciplinary record, he asserts in his deposition and his Memorandum of Law that a good disciplinary record and good behavior was required to hold the IG Rep. position, so it may be inferred that he had a good disciplinary record at that time. Pl.'s Dep. at pp. 29-30; Pl.'s Mem. of Law at p. 3. As to statements by Defendant Pelo regarding her motivation, she asserts that the misbehavior report was not because of any grievance he filed or threatened to file. Based on the above factors, because of the close temporal proximity and the reversal of the harassment finding, the Court recommends finding there is a genuine issue of material fact as to whether Defendant Pelo retaliated against Plaintiff.

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether an official protected by qualified immunity may be held liable for an alleged unlawful action turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Lewis v. Cowan*, 165 F.3d 154, 166 (2d Cir. 1999).

As to this claim, the misbehavior report and the letters on which it is based are attached to Defendant Pelo's declaration. *See* Ex. A to Pelo Decl. The misbehavior report simply states details regarding the manner in which Defendant Pelo received the

correspondence, the form of the correspondence, quotes from the letters, and twice states that Defendant Pelo believed that Plaintiff was harassing her. *Id*. at p. 1. The misbehavior report is materially true: aside from Defendant Pelo's assertions that she believed she was being harassed, the report simply states the content of the correspondence. "[I]t is objectively reasonable for a correctional officer to believe that issuing a materially true misbehavior report about any inmate would not violate statutory or constitutional law." *Salvatierra v. Connolly*, 2012 WL 996944, at *16 n. 9. Defendant Pelo's actions were therefore objectively reasonable in writing the misbehavior report.

As Plaintiff's claim contains a subjective component, in order to avoid summary judgment, Plaintiff must then "proffer particularized evidence of direct or circumstantial facts . . . supporting the claim of an improper motive," by way of "expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken." *Blue v. Koren*, 72 F.3d 1075, 1084 (2d Cir. 1995). Plaintiff has not offered any expressions by Defendant Pelo regarding her state of mind that would indicate she had an improper motive. In addition, Plaintiff does not proffer particularized evidence suggesting that Plaintiff was singled out, or suggesting that the actions taken were highly unusual. The writing of a misbehavior report based on Plaintiff's letters is not "sufficiently unusual to satisfy the heightened evidentiary standard." *Id.* at 1085. The Court recommends finding that Defendant Pelo is entitled to qualified immunity and granting the Motion on that basis.

## 2. *Defendant Young*

As discussed above there is a genuine issue of material fact regarding whether Defendant Young was involved in the deduction of money from Plaintiff's account on October 6, 2014. The Court recommends dismissing Plaintiff's claim that her involvement in the deduction was retaliatory, however.

Initially, "[a]s a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." *Hare v. Hayden*, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011); *see also Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (collecting cases). Plaintiff only offers conclusory assertions that Defendant Young was aware of Plaintiff's grievance against C.O. Keogh; as such, Plaintiff does not meet this "difficult" burden. *See id.* Defendant Young states that she does not know Correction Officer Keogh, and did not retaliate against Plaintiff for grieving him or threatening to file any grievance. Young Decl. at ¶ 28. Plaintiff has not provided evidence of any motivation Defendant Young would have had to retaliate against Plaintiff, particularly in light of Defendant Young's statement that she does not know C.O. Keogh. The Court recommends that this claim be dismissed.

## 3. *Defendant Eastman*

Plaintiff alleges that on October 8, 2014, Defendant Eastman ordered Defendant Fraser to write a false IPC recommendation report against Plaintiff. Pl.'s Mem. of Law at p. 26. Plaintiff also contends that in November and December 2014 Defendant Eastman improperly upheld Plaintiff's IPC placement on review. Plaintiff alleges that Eastman's 30-day reviews of Plaintiff's IPC status were nothing but a hollow formality,

and that he would have continued to recommend that Plaintiff be placed in IPC regardless of what the Counselor or Security Unit Supervisory ("SUS") would have recommended. *Id.* at p. 13.  Plaintiff further alleges that Defendant Eastman was aware of Plaintiff's grievances via Phil Melecio's email to him.  *Id.* at p. 25.

Defendant Eastman was the Deputy Superintendent of Security ("DSS") at Great Meadow during the period at issue.  Eastman Decl. at ¶ 2.  Regarding the 30-day reviews of IPC status, an IPC Review form is created and first filled out by a Correction Counselor, who recommends whether the inmate should remain in IPC or be placed in general population.  *Id.* at ¶¶ 9-10.  The form then goes to the SUS for a recommendation as to whether the inmate should be placed, and then to the DSS.  *Id.* at ¶¶ 11-12.  Eastman, as a DSS, then made recommendations based upon the notes and recommendations of the Counselor and SUS.  *Id.* at ¶ 13.

On November 23, 2014, Defendant Eastman recommended that Plaintiff remain in IPC, based upon the recommendations of the Counselor and SUS, because Plaintiff was doing well in IPC, and due to concern over Plaintiff's safety in general population based on his being labeled a "rat."  *Id.* at ¶¶ 16-21.  Defendant Eastman again reviewed Plaintiff's IPC status on December 23, 2014, when Plaintiff was in SHU, and recommended that he remain housed there based on his being found guilty of harassment, a review of the Counselor and SUS recommendations, and Plaintiff's misbehavior in IPC. *Id.* at ¶¶ 22-27.  On January 22, 2015, Defendant Eastman again reviewed Plaintiff's IPC status, recommending that he be placed back in IPC based on the Counselor and SUS recommendations, and Plaintiff's demonstration of a willingness to follow DOCCS' rules

and regulations, and because he had been labeled a "rat" by the general population.  *Id.* at ¶¶ 28-32.

Plaintiff contends that Defendant Eastman was informed of Plaintiff's grievance by an e-mail from Phil Melecio, and right after that, he ordered that Plaintiff be sent to IPC.  Dkt. No. 73-3, Pl.'s SMF In Dispute, ¶¶ 13 & 15.  Plaintiff alleges that "No doubt after Eastman read the e-mail he conversed with Melecio and found out that Plaintiff intended to file an alarming grievance regarding his confiscated funds, because what happened next makes it apparent that a conspiracy ensued to have Plaintiff removed from the Grievance Office."  Pl.'s Mem. of Law at p. 8.  Plaintiff further asserts that Defendant Eastman "did not like Plaintiff because Plaintiff had complained to then Superintendent Racette about Eastman denying him from getting back into Honor Block, and because Plaintiff had indirectly written a grievance (and complained to Sgt. Vedder) about Eastman blocking him from being Head Clerk in the Grievance Office."  *Id.*

Defendant Eastman asserts that his recommendations were made solely to protect Plaintiff and Great Meadow, and that he was unaware of any grievance Plaintiff filed against Correction Officer Keogh or regarding the deduction of funds from his account. Eastman Decl. at ¶¶ 34 & 37.  First, to the extent that Plaintiff contends that Defendant Eastman retaliated against him because Plaintiff planned to file a grievance regarded the deduction of funds, Plaintiff does not allege that Defendant Eastman was involved in that deduction.  It is therefore unclear why he would have a motivation to retaliate against Plaintiff based on that grievance.  In addition, regarding Plaintiff's assertion that Defendant Eastman disliked him because Plaintiff went over his head to the

Superintendent to get placed in Honor Block, Plaintiff stated in his deposition that, although Defendant Eastman was upset about this, "he didn't retaliate against me or anything." Pl.'s Dep. at pp. 116-118. In any event, he alleges this occurred in 2012; "[t]wo years . . . is too attenuated to support an inference of a causal connection." *Waters v. Melendez*, 2018 WL 3079764, at *11 (N.D.N.Y. May 18, 2018) (collecting cases). Plaintiff also alleges that he filed a grievance against Defendant Eastman for blocking him from becoming the lead clerk, but does not provide any additional information about this. Dkt. No. 73-2, Pl.'s Aff'd, at ¶ 22. Finally, as to Plaintiff's claim that Defendant Eastman ordered Defendant Fraser to write a false IPC recommendation report, Plaintiff provides no evidence to support this claim. *Scott v. Coughli*n, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). As such, Plaintiff has offered no basis to find that Defendant Eastman's actions were made with a retaliatory motive, and the Court recommends that this claim be dismissed.

### 4. *Defendant Fraser*

Plaintiff alleges that Defendant Fraser retaliated against him by writing a false IPC recommendation report against him in October 2014.

During the relevant period, Defendant Fraser was a Sergeant at Great Meadow. Fraser Decl. at ¶ 2. In his Declaration, Defendant Fraser explains that he issued an IPC recommendation report requesting that Plaintiff be placed in Protective Custody for the safety and security of Plaintiff and Great Meadow. *Id.* at ¶ 21. He also testified during

the IPC hearing and expressed concerns about Plaintiff's safety in the general population. *Id.* at ¶ 24. Defendant Fraser asserts that the IPC Recommendation was based solely on information he received regarding Plaintiff's safety, and was in no way influenced by any grievance Plaintiff filed or threatened to file. *Id.* at ¶¶ 26-27. Defendant Fraser further states that when he issued the IPC Recommendation and testified during the IPC hearing, he had no knowledge of Plaintiff's grievance against C.O. Keogh; Plaintiff does not provide any evidence to contest this. *Id.* at ¶ 28; Defs.' SMF at ¶ 94 & Pl.'s Opp. to Defs.' SMF at ¶ 94.

None of Plaintiff's grievances had to do with Defendant Fraser; as such, Plaintiff faces a high burden to demonstrate a retaliatory motive. *Hare v. Hayden*, 2011 WL 1453789, at *4. Plaintiff's only allegation regarding a motive is that Defendant Fraser was ordered by Defendant Eastman to write the report. *See* Pl.'s Opp. to Defs.' SMF at ¶ 54. Acting on a superior officer's commands does not suffice to establish a retaliatory motive, and in any event, the allegations here are entirely conclusory and speculative. *See Flaherty v. Coughlin*, 713 F.2d at 13. The Court recommends that this claim be dismissed.

### 5. *Defendant Miller*

Plaintiff alleges that in November and December 2014 Defendant Miller improperly upheld his IPC placement on review. Plaintiff alleges that Defendant Miller retaliated against him for "more tangential" reasons than did other Defendants: he was "simply going along with Eastman's and Pelo's decision to have Plaintiff removed from the Grievance Office. But regardless of Miller's reasons, his actions were demonstrably

illegal because he knew" that the bases for Plaintiff's placement in IPC were invalid.  Pl.'s Mem. of Law at p. 12.  Plaintiff asserts that Defendant Miller knew about Plaintiff's grievances because he was cc'ed on Defendant Young's email to Phil Melecio and Thomas Forbes, and because Plaintiff appealed his grievances regarding the deducted funds and Defendant Pelo to him.  *Id.* at p. 13.  Plaintiff alleges that Defendant Miller's 30-day reviews of Plaintiff's IPC status were nothing but a hollow formality, and that Plaintiff would have continued to be placed in IPC regardless of what the Counselor or SUS would have recommended.  *Id.* at p. 13.  Plaintiff asserts that Defendant Miller was personally involved because he continued to uphold Plaintiff's IPC status even though he knew there was no legitimate reason for him to be placed there.  *Id.* at pp. 25-26.

Defendant Miller states in his Declaration that during the period at issue he was Superintendent at Great Meadow.  Miller Decl. at ¶ 1.  As Superintendent, he reviewed dispositions of IPC hearings.  *Id.* at ¶ 7.  On October 27, 2014, when the IPC hearing determination reached his desk, Defendant Miller was out of the facility.  *Id.* at ¶ 9.  In his absence, the First Deputy Superintendent at Great Meadow reviewed the determination and signed off on it.  *Id.* at ¶¶ 10-11.  Defendant Miller also is involved in the 30-day review of the status of inmates in IPC.  *Id.* at ¶¶ 12-13.  After the 30-day review form goes from the Counselor to the SUS to the DSS, it proceeds to Defendant Miller for a recommendation about where the inmate should be placed, based upon the notes of the Counselor, SUS, DSS, and a cursory review of why the inmate was placed in IPC.  *Id.* at ¶¶ 14-19.  In making such a determination, Defendant Miller would not independently

investigate why the inmate was placed in IPC or what occurred during the IPC hearing. *Id.* at ¶ 20.

On November 23, 2014, review of Plaintiff's IPC status reached Defendant Miller's desk; he was out of the office and the Acting Superintendent recommended that Plaintiff remain in IPC. *Id.* at ¶¶ 21-22. Defendant Miller reviewed Plaintiff's IPC status again on December 26, 2014, and based upon the recommendations of the Counselor, SUS and DSS and Plaintiff's disciplinary sentence, he recommended that Plaintiff remain in SHU. *Id.* at ¶¶ 23-28. Defendant Miller again reviewed Plaintiff's IPC status on January 22, 2015, and recommended that Plaintiff be placed back in IPC based upon the recommendations of the Counselor, SUS and DSS, and concerns about Plaintiff's safety among the general population. *Id.* at ¶¶ 29-33. Defendant Miller states that he recommended that Plaintiff remain in IPC or SHU solely to protect Plaintiff and Great Meadow, and that he relied upon information provided by other DOCCS staff members in determining where Plaintiff should be placed. *Id.* at ¶¶ 35-36. His actions were not influenced by any grievance Plaintiff filed or threatened to file, and he is unaware of any grievance Plaintiff filed against C.O. Keogh. *Id.* at ¶¶ 37-38.

Here, Plaintiff again fails to demonstrate an issue of material fact as to whether Defendant Miller retaliated against him. His assertions regarding Defendant Miller's intentions, and that his reviews constituted a "hollow formality" are without any evidentiary support. As with Defendant Fraser, none of Plaintiff's grievances had to do with Defendant Miller; as such, Plaintiff's conclusory statements do not suffice to satisfy the "difficult" burden of establishing a retaliatory motive. *Hare v. Hayden*, 2011 WL

1453789, at *4.  The Court therefore recommends that Plaintiff's retaliation claim against Defendant Miller be dismissed.[8]

### 6. Defendant McKeighan

Plaintiff alleges that from October 21, 2014 to October 24, 2014 Defendant McKeighan retaliated against Plaintiff in relation to his IPC and IGRC hearings and determinations.  Defendant McKeighan asserts that his actions during the hearings were "in no way influenced by any grievance plaintiff filed against C.O. Keogh or intended to file regarding the deduction of funds from his inmate account."  McKeighan Decl. at ¶ 49.  He further states that he does not know C.O. Keogh.  *Id.* at ¶ 50.

Plaintiff does not point to any evidence regarding the alleged retaliation by Defendant McKeighan. Plaintiff appears to have pled a causal connection based upon Defendant McKeighan's desire to protect the other Defendants and further their goal of punishing Plaintiff.  *See* Compl. at ¶¶ 40-48; Pl.'s Dep. at pp. 143-45.  Plaintiff has not provided any evidence that would support such a theory.  As such, there is no evidence of a causal connection that could raise a question of material fact as to retaliation by Defendant McKeighan, particularly in light of the fact that none of Plaintiff's protected activity had anything to do with Defendant McKeighan.  *See Hare v. Hayden*, 2011 WL

---

[8] The analysis regarding Defendants' periodic reviews of Plaintiff's IPC status would require different considerations if Plaintiff asserted a due process claim regarding the period reviews; however, Plaintiff does not make such a claim.

1453789, at *4.  The Court therefore recommends that Plaintiff's retaliation claim against Defendant McKeighan be dismissed.[9]

## III. DISCUSSION OF PLAINTIFF'S CROSS-MOTION

Plaintiff cross-moves for summary judgment on certain of his claims.

### A.  Plaintiff's Due Process Claims

#### 1.  Deduction of Funds from Plaintiff's Account

Plaintiff moves for summary judgment on his claims that Defendant Pelo and Defendant Young did not afford him due process in deducting funds from his account. Pl.'s Mem. of Law at p. 28.

As for Plaintiff's claim against Defendant Pelo, the Court recommends denying the Motion.  As discussed above in Point II.B.1, the Court found that Defendant Pelo's motion should be granted and the claim be dismissed because there is no question of material fact as to her involvement in the deduction of funds.  Therefore, Plaintiff's Motion should be denied.

As for Plaintiff's claim against Defendant Young, on the present record, it is unclear the extent to which Defendant Young was involved in the deduction of funds.  As discussed above in Point II.B.2, when considering Defendants' Motion and viewing the evidence in the light most favorable to the non-movant, Plaintiff, the Court found there are genuine issues of material fact as to whether Defendant Young was involved in the deduction of funds.  However, when considering the evidence in the light most favorable

---

[9] Defendants also move for summary judgment regarding Plaintiff's retaliation claims on behalf of Defendants Young, Eastman, Fraser, Miller, and McKeighan on the basis of qualified immunity.  Because the Court finds there is no question of material fact as to their liability, it does not reach this issue.

to Defendant Young on Plaintiff's Motion, Plaintiff has not proven that Defendant Young played a sufficient role in the deduction of funds for her to potentially be held liable for any violation. Indeed, it is unclear whether Defendant Young personally provided Mr. Forbes and Mr. Melecio with instruction to take action regarding specific errors that had been made, or whether she simply passed information along that she has no real control or involvement with in her role. As such, the Court recommends denying the Motion as to Defendant Young.

### 2. Denial of Due Process by Defendant McKeighan

Plaintiff also cross-moves for summary judgment on his claim that Defendant McKeighan denied him due process in connection with his IPC and IGRC hearings. Pl.'s Mem. of Law at pp. 29-30. As discussed above in Point III.B.3, the Court found that Defendant McKeighan's Motion should be granted regarding Plaintiff's due process claim and that the claim should be dismissed because there is no question of material fact as to whether Defendant McKeighan violated Plaintiff's due process rights. As such, the Court recommends denying Plaintiff's Motion as to Defendant McKeighan.

### B. Plaintiff's Retaliation Claims

### 1. Defendant Pelo

Plaintiff moves for summary judgment on his claim that Defendant Pelo retaliated against him by submitting a false misbehavior report. Pl.'s Mem. of Law at pp. 30-32. As discussed above in Point II.C.1, the Court found that Defendant Pelo's Motion should be granted and the claim be dismissed because she is entitled to qualified immunity on this claim. Therefore, Plaintiff's Motion should be denied.

## 2. *Defendant Fraser*

Plaintiff also moves for summary judgment on his claim that Defendant Fraser retaliated against him for filing a grievance regarding the deduction of his funds. Pl.'s Mem. of Law at p. 32. However, in Point II.C.4, above, the Court found that Defendant Fraser's Motion should be granted and the claim be dismissed because Plaintiff has presented no evidence demonstrating an issue of material fact as to a retaliatory motive. Plaintiff's Motion should therefore be denied.

### IV. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 59) be **GRANTED IN PART AND DENIED IN PART**; and it is further

**RECOMMENDED**, that Plaintiff's due process claim against Defendant Young be permitted to proceed; and it is further

**RECOMMENDED**, that the remainder of Plaintiff's claims be **DISMISSED**; and it is further

**RECOMMENDED**, that Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 73) be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[10] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated:   February 15, 2019
        Albany, NY

Daniel J. Stewart
U.S. Magistrate Judge

---

[10] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).